# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAMES BRAND, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 11 C 8471 |
| ) | |
| COMCAST CORPORATION, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

James Brand and eleven others, on behalf of a putative class of African-American employees employed at the South Side Chicago facility of defendant Comcast Corporation, Inc., filed suit against Comcast, alleging discrimination under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. Following class discovery, plaintiffs sought to certify various classes. In July 2014, this Court granted plaintiffs' motion for class certification, but only in part. The parties then engaged in merits discovery. Plaintiffs have now moved to amend the Court's class certification order to certify two additional classes. For the reasons stated below, the Court denies plaintiffs' motion.

## Background

The Court assumes familiarity with the plaintiffs' allegations in this case and will summarize them only briefly here. A more detailed recounting of the plaintiffs' allegations can be found in the Court's July 5, 2014 decision on plaintiffs' motion for class certification. *See Brand v. Comcast Corp.*, 302 F.R.D. 201 (N.D. Ill. 2014).

The twelve named plaintiffs are Comcast employees who work or worked out of the company's facility on South 112th Street in Chicago. According to the plaintiffs, the workforce at the 112th Street facility is ninety percent African American. In their second amended complaint, plaintiffs alleged that beginning in 2005, Comcast exposed 112th Street personnel to a hostile working environment defined by insect and vermin infestations and management's frequent use of racial epithets. In addition, plaintiffs alleged that the neighborhoods they serviced were ill equipped to accommodate quality cable service; Comcast frequently delayed or denied necessary training for 112th Street workers; and Comcast intentionally and systematically supplied old, defective, and insect-infested equipment to 112th Street workers and often failed to supply them with the tools and equipment they needed to successfully perform their jobs as service and line technicians. As a result, plaintiffs alleged, 112th Street workers frequently failed to meet Comcast's performance metrics, which led to lower pay, fewer promotions, and more discipline than for the mostly-white technicians at other Comcast facilities.

In their original motion for class certification, plaintiffs sought to certify five classes, some of which they characterized as subclasses. First, plaintiffs sought to certify a "hostile work environment class," consisting of "[a]ll current and former African American employees at the 112th Street facility during the period January 1, 2005 and the present." Pls.' Class Cert. Mot. ¶ 4. Next, plaintiffs sought to certify an "overall terms and conditions class," which they defined as "[a]ll current and former African American employees employed between November 2007 and the present by Comcast at the 112th Street facility." *Id.* ¶ 6. Plaintiffs also sought to certify a "promotions" class ("[a]ll current and former technicians at the CT2 or higher level who were denied or

delayed promotions"); a "pay" class ("[a]ll current and former cable technicians at the CT2 or higher level who were denied equal and appropriate pay rates"); and a "discipline or termination" class ("[a]ll current and former cable technicians who were subjected to discriminatory discipline or terminations"). *Id.* ¶ 7(a)–(c).

The Court certified plaintiffs' hostile work environment class after finding that it met the requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(3). *See Brand*, 302 F.R.D. at 224. The Court concluded, however, that plaintiffs' other proposed classes lacked the commonality required by Federal Rule of Civil Procedure 23(a)(3) as defined by the Supreme Court in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). The Court observed that the wide array of experiences among the named plaintiffs portended even more variation in the claims and experiences of unnamed members of the terms and conditions, promotions, and pay classes. *Brand*, 302 F.R.D. at 226–27, 229–30. Likewise, the Court found that "plaintiffs' discipline and termination claims as set forth here do not possess 'a common contention' wherein 'determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Id.* at 231 (quoting *Wal-Mart*, 131 S. Ct. at 2551). The Court thus declined to certify any of the plaintiffs' four additional proposed classes.

The parties proceeded to merits discovery, during which plaintiffs took the depositions of numerous Comcast personnel and continued to analyze the "hundreds of thousands of pages" of data that Comcast had produced. Pls.' Reply in Support of Mot. to Amend Class Certif. Order at 14. Fact discovery closed on June 13, 2015, and expert discovery closed on July 13, 2015. One week later, plaintiffs filed the present motion to amend the Court's class certification order.

Plaintiffs contend that three crucial facts came to light during merits discovery that warrant revisiting the matter and certifying a promotions class and a discipline class. They say that if these facts had been revealed during class discovery, it would have changed both their strategy and the Court's class certification ruling. First, plaintiffs claim that although Comcast's 30(b)(6) witnesses represented that the performance improvement plan program, or "PIP program," was designed to capture only ten percent of employees, later depositions revealed that Comcast was well aware when it implemented the program that a much larger percentage of 112th Street technicians would be placed on performance improvement plans than technicians in other areas. Second, plaintiffs argue that contrary to Comcast's representations during class discovery that the PIP program applied to all four areas of the greater Chicago region and was phased out in late 2009 to early 2010, evidence revealed that two of the four areas (including the area that is home to 112th Street) did not fully discontinue the PIP program until the end of 2011. Third, plaintiffs claim that during depositions conducted after the Court's class certification ruling, Comcast representatives revealed that at the time the company set its performance metrics for technicians to qualify for advancement (known as Qualify to Pursue, or "QTP"), Comcast was aware that only two percent of technicians in 112th Street's area would qualify.

Accordingly, plaintiffs seek to certify two additional classes: (1) "all current and former African American technicians at the 112th Street facility that were subject to a Performance Improvement Plan ('PIP') from November of 2007 through December of 2011, as a result of failing to meet a specific performance metric"; and (2) "all current and former African American CommTech 3 employees at 112th Street that failed to

4

Qualify to Pursue ('QTP') to the next technician level from January of 2009 through December of 2011, as a result of failing to meet a specific performance metric." Pls.' Mem. in Support of Mot. to Amend Class Certif. Order at 2.

## Discussion

Comcast argues that plaintiffs should not be permitted to seek amendment of the Court's class certification order because their motion is not timely. Comcast also argues that on the merits, plaintiffs' newly proposed discipline and promotions classes do not satisfy Rule 23. Specifically, Comcast contends that both of plaintiffs' proposed classes lack the requisite commonality and that plaintiffs Wharton and Jordan are not adequate representatives with claims typical of the proposed QTP class. Comcast further argues that plaintiffs' proposed classes are inappropriate for certification under either Rule 23(b)(3) or Rule 23(c)(4).

Comcast first urges the Court to reject plaintiffs' motion out of hand because at the time plaintiffs filed for class certification in October 2013, they either already knew or were in the position to know the information upon which they base their current motion. The Court declines to do so. Whether or not evidence was withheld or facts misrepresented as plaintiffs contend, there is enough arguably new evidence to warrant revisiting the issue of class certification. Under Federal Rule of Civil Procedure 23(c)(1), "[a]n order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1). Class certification orders are thus "inherently tentative." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 n.11 (1978). After a court enters a certification order, "the judge remains free to modify it in the light of subsequent developments in the litigation." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S.

147, 160 (1982).

The Court therefore turns to the merits of plaintiffs' motion. A party seeking class certification must "affirmatively demonstrate his compliance" with the requirements of Federal Rule of Civil Procedure 23. *Wal-Mart*, 131 S. Ct. at 2551; *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 376 (7th Cir. 2015). Thus plaintiffs must show each of their proposed classes satisfies the four requirements of Rule 23(a): the class is so numerous that joinder of all of the class members is impracticable (numerosity); there are questions of fact or law common to the class (commonality); the class representatives' claims are typical of the claims of the class (typicality); and the representatives will fairly and adequately represent the class's interests (adequacy of representation). Fed. R. Civ. P. 23(a)(1)–(4); *see Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 811 (7th Cir. 2012). Plaintiffs also must demonstrate that each proposed class falls within one of the three categories provided under Rule 23(b). *Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 433 (7th Cir. 2015).

Under Title VII of the Civil Rights Act, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). It is also unlawful for an employer to discriminate on the basis of race in the creation or enforcement of contracts. *See* 42 U.S.C. § 1981. Plaintiffs have chosen to proceed with the employment discrimination claims applicable to their two newly proposed classes under a disparate treatment theory rather than a

6

disparate impact theory.  To prove disparate treatment, plaintiffs must do more than simply show that their employer knew a policy would have a disparate impact; plaintiffs must demonstrate that defendant acted with discriminatory intent.  *See Chaib v. Indiana*, 744 F.3d 974, 984 (7th Cir. 2014); *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1104 n.1 (7th Cir. 2012) ("[T]he elements and methods of proof for § 1981 claims are essentially identical to those under Title VII, . . . so we need not analyze them separately.") (internal citations and quotation marks omitted); *cf. Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (holding in the context of a constitutional equal protection claim that "'discriminatory purpose' implies more than intent as volition or intent as awareness of consequences.  It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group") (internal citation omitted).

A plaintiff may prove discrimination directly or indirectly.  To prevail under the direct method of proof, a "plaintiff must produce either direct or circumstantial evidence that would permit a jury to infer that discrimination motivated an adverse employment action." *Langenbach v. Wal-Mart Stores, Inc.*, 761 F.3d 792, 802 (7th Cir. 2014) Under the indirect method, a plaintiff faces an initial burden to show "(1) he is a member of a protected class; (2) he was meeting his employer's legitimate expectations; (3) he was subject to an adverse employment action; and (4) similarly situated employees who were not members of the protected class were treated more favorably." *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 815 (7th Cir. 2015).  Under either approach, a plaintiff must demonstrate that she was the victim of adverse employment action and that the adverse action was the result of discrimination.

7

1. **Proposed PIP class**

The newly proposed PIP class appears narrower than its predecessor, plaintiffs' earlier-proposed discipline class. Instead of seeking to certify a class of all African-American technicians who were "subject to discriminatory discipline or termination," plaintiffs seek only to certify a class of African-American technicians who, between November 2007 and December 2011, were placed on performance improvement plans. Plaintiffs offer evidence that Comcast had knowledge that 112th Street technicians would struggle to satisfy the company's performance metrics more than technicians at other locations and thus would be placed on performance improvement plans more frequently than their counterparts at other facilities. Plaintiffs also offer evidence that two other areas in the greater Chicago area phased out the PIP program long before the 112th Street facility did so.

Both the Supreme Court in *Wal-Mart* and the Seventh Circuit in subsequent cases have said that to show commonality, a plaintiff must show that the class members all "suffered the same injury." *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 497 (7th Cir. 2012) (citing *Wal-Mart*, 131 S. Ct. at 2551); *Bolden v. Walsh Const. Co.*, 688 F.3d 893, 896 (7th Cir. 2012). Placement on a performance improvement plan, however, is not the relevant "injury" on a claim under Title VII or section 1981. The Seventh Circuit has repeatedly held that placing an employee on a performance improvement plan is not enough, by itself, to constitute actionable adverse employment action. *See Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 677 (7th Cir. 2011); *Cole v. Illinois*, 562 F.3d 812, 816-17 (7th Cir. 2009); *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 613 (7th Cir. 2001).

8

The fact that placement on a performance improvement plan is insufficient to give rise to liability does not mean that Comcast's establishment and imposition of its performance metrics cannot be a common question within the meaning of Rule 23(a)(2) and *Wal-Mart*. The Seventh Circuit's decision in *Chicago Teachers Union* illustrates this point. *Chicago Teachers Union* involved the Chicago Board of Education's process of selecting schools for "turnaround," which resulted in (among other things) replacement of all of a selected school's faculty. Schools that failed to meet certain objective criteria were candidates for turnaround, but the final selection included subjective criteria and discretion on the part of decision makers. The Seventh Circuit ruled that the use and application of the initial, objective selection criteria qualified as a common question under Rule 23(a)(2) and *Wal-Mart*. *Chicago Teachers Union*, 797 F.3d at 436. In short, it is clear from *Chicago Teachers Union* that the common question for Rule 23 purposes need not involve the ultimate imposition of adverse action; as the court put it, "an early discriminatory process can taint the entire process." *Id.*

But even if plaintiffs' proposed common questions, which involve Comcast's knowledge of the impact of its performance metrics on African-American workers at the 112th Street facility, might qualify under Rule 23(a)(2)—a point the Court need not decide definitively—that would not require certification of the proposed class. Unlike the plaintiffs in *Chicago Teachers Union*, who sought class certification under Rule 23(b)(2), the plaintiffs in the present case seek certification under Rule 23(b)(3), which requires them to show that questions common to members of the class predominate over questions affecting only individual members. This requires the Court to look at the entire picture, not just the particular issue or issues claimed to be common to members

9

of the class.

When it comes to the big picture, this case is not like *Chicago Teachers Union*, which unlike the present case proceeded on a theory of disparate impact, not disparate treatment. Specifically, plaintiffs do not suggest that every 112th Street worker placed on a performance improvement plan suffered the same type of injury as a result. In fact, it was clear from plaintiffs' first motion for class certification that the opposite is true: some class members who were put on a performance improvement plan were disciplined, and some were not; some eventually were terminated, but others were not; and still others were terminated but later reinstated. The Court is unpersuaded that the common issues concerning Comcast's establishment of the performance metrics and its awareness of the impact of that decision would predominate over the myriad individual issues concerning how particular workers were treated because of the application of the performance metrics.

**2.     Proposed QTP class**

Plaintiffs' proposed QTP class is also a revision of an earlier-proposed class. In their initial motion for class certification, plaintiffs proposed a promotions class consisting of all current and former technicians who reached CommTech 2 level but saw their promotions delayed or denied. Now, plaintiffs propose a QTP class consisting of African-American technicians at 112th Street who, between January 2009 and December 2011, advanced to CommTech 3 level but did not achieve QTP status. By redrawing their promotions class in this way, plaintiffs claim to have proposed a class of technicians who were all denied advancement for the same reason: their failure to satisfy Comcast's performance metrics, which, plaintiffs contend, Comcast designed

and implemented even though it was fully aware that 112th Street technicians would disproportionately fail.

Unlike placement on a performance improvement plan, denial of promotion qualifies as adverse employment action under Title VII and section 1981. *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004). That said, attaining QTP status is not, in itself, a promotion to a higher position. A technician who attains QTP status remains at CommTech 3 level until he is promoted to CommTech 4, and as Comcast points out, even the named plaintiffs claim a variety of experiences regarding promotion to CommTech 4—some were never promoted, some were promoted late, and some did not seek promotion in the first place. Plaintiffs, however, do not focus on whether workers were denied advancement to CommTech 4 level. Rather, they frame attaining QTP status as effectively a promotion in and of itself, emphasizing that a worker who "qualifies to pursue" receives an automatic five percent raise upon doing so. In this way, plaintiffs say, all members of the QTP class were denied a pay raise that they otherwise would have received but for Comcast discriminating against them by setting the QTP metrics.

But before ever failing to meet the metrics, the plaintiffs had a variety of experiences that are far more germane to the disparate treatment at the heart of this lawsuit. Some technicians may have come up short because Comcast deliberately withheld training; some may have failed because Comcast intentionally provided them with inadequate tools or defective or infested equipment. Meanwhile, some technicians may claim that they failed to meet the performance standards because a supervisor exercised discretion in choosing to apply the metrics to them based on their race.

The new evidence to which plaintiffs direct the Court's attention in their motion to amend class certification does not change the fact that plaintiffs seek to challenge facially neutral performance standards based on the way those standards were applied to African-American technicians at 112th Street. In the original class certification order, the Court observed:

> To begin with, the "promotions policy" as plaintiffs describe it does not in itself contain any discriminatory elements. It simply establishes a progression for employees to accede to higher-ranked positions within Comcast, setting up various requirements along the way. Plaintiffs appear instead to be arguing that the way the policy was implemented was discriminatory—not that the policy itself was discriminatory. That does not help them in their task to demonstrate commonality, a problem borne out by plaintiffs' own descriptions of differences in various plaintiffs' experiences. . . . These differences add to the impression that plaintiffs' promotions allegations do not derive from "a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor," as they must in order to satisfy Rule 23(a)'s commonality requirement. *Wal-Mart*, 131 S. Ct. at 2551.

*Brand*, 302 F.R.D. at 228–29. This reasoning applies equally to plaintiffs' proposed QTP class.

In sum, even if plaintiffs were to prove that Comcast did set its performance metrics knowing that African-American employees at 112th Street would be disproportionately disciplined and denied promotion, and that Comcast did not change its metrics even after learning the metrics indeed created such disproportionate impact, each individual plaintiff would have significant additional work to do in order to prove that he or she was subject to adverse employment action as a result of intentional discrimination. Each plaintiff would need to demonstrate individually that he or she failed to meet performance objectives as a direct result of Comcast's effort to undermine 112th Street technicians and that this resulted in adverse employment action. Simply

proving that Comcast knew 112th Street workers would struggle to meet its performance metrics more often than others would not be enough. Instead, plaintiffs would be left to show the myriad ways in which Comcast undermined each individual employee, and the various forms of adverse employment action those employees experienced after being placed on performance improvement plans. For these reasons, plaintiffs' proposed common questions do not predominate over individual issues as required by Rule 23(b)(3).

## Conclusion

For the foregoing reasons, the Court denies plaintiffs' motion to amend the Court's class certification order [dkt. no. 132].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: November 13, 2015